# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DR. JAMES ROBERTSON,**

      **Plaintiff,**                                **Case No. 2:06-cv-1087**
                                                        **JUDGE GREGORY L. FROST**
      **v.**                                                   **Magistrate Judge Norah McCann King**

**DR. TOM ROSOL, et al.,**

      **Defendants.**

**SUZANNE HUCK,**

      **Plaintiff,**                                   **Case No. 2:06-cv-1088**
                                                         **JUDGE GREGORY L. FROST**
      **v.**                                                   **Magistrate Judge Mark R. Abel**

**DR. JIM BELKNAP, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings[1]:

(1) In case No. 2:06-cv-1087, Defendants' motion for judgment on the pleadings (Doc. # 6), Plaintiffs' memorandum in opposition (Doc. # 11), and a reply (Doc. # 19); and

(2) In case No. 2:06-cv-1088, Defendants' motion for judgment on the pleadings (Doc. # 4), Plaintiffs' memorandum in opposition (Doc. # 9), and a reply (Doc. # 12).

For the reasons that follow, this Court **GRANTS** Defendants' motions.

---

[1] The Court has consolidated the above-captioned cases (Doc. # 24 in Case No. 2:06-cv-1087; Doc. # 21 in Case No. 2:06-cv-1088).

**I. Background**

Plaintiff James Robertson ("Plaintiff Robertson") is a doctor of veterinary medicine employed by the College of Veterinary Medicine ("the College") at The Ohio State University ("OSU"). (Doc. # 1 ¶ 12.[2])  Plaintiff Suzanne L. Huck ("Plaintiff Huck") is a veterinary technician also employed by the College at OSU. (¶ 10 in Huck Compl.)

On September 12, 2005, Plaintiff Huck complained to Dr. Richard Bednarski, the director of the Veterinary Hospital and Plaintiff Huck's supervisor, about alleged gender-based discriminatory treatment she had received from Defendant Dr. Jim Belknap ("Defendant Belknap"), the acting chief for the Equine Section of the College, and two other doctors. (¶ 12 in Huck Compl.)

In a separate incident, on October 5, 2005, Plaintiffs Robertson and Huck maintain that one of the technicians at the College, Kristen Benson, was sexually harassed by a doctor at the Galbreath Equine Center. (Doc. # 1 ¶ 13.) Benson subsequently filed a complaint with the College against the doctor, pursuant to OSU's policy prohibiting sexual harassment. (Doc. # 1 ¶ 14.) Allegedly fearing retaliation from her superiors, Benson consulted with Plaintiffs Robertson and Huck, who advised her to pursue her complaint. (Doc. # 1 ¶ 15.) What followed, Plaintiffs maintain, was a series of retaliatory acts made against them by their superiors at the College for advising Benson. The first of these, Plaintiffs allege, was an investigation by OSU human resources personnel involving e-mails of a sexual nature sent by Benson. (Doc. # 1 ¶¶ 17.)

The human resources official in charge of the investigation recommended suspension

---

[2] Unless otherwise indicated, all document citations refer to the docket in Plaintiff Robertson's case, 2:06-cv-1087. Plaintiffs' and Defendants' legal arguments are identical in both cases.

without pay for Plaintiff Huck, a determination that she appealed, asserting retaliation, on February 24, 2006. (¶ 25 in Huck Compl.) On March 23, 2006, Plaintiff Huck was involuntarily reassigned to a non-supervisory position outside of the College's Equine Section. (¶ 27 in Huck Compl.)

Plaintiff Robertson, as a result of the investigation, received a letter of reprimand for not reporting Benson's e-mails. (Doc. # 1 ¶ 19.) Asserting retaliation, Plaintiff Robertson appealed the finding on February 7, 2006. (Doc. # 1 ¶ 22.) Two days later, Defendant Dr. Tom Rosol ("Defendant Rosol"), dean of the College, sent an e-mail message to all of the College's faculty and staff stating that certain leaders were forming a team to improve the efficiency and environment of the Equine Section. (Doc. # 1 ¶ 23.) Plaintiff Robertson alleges that two of the team members–Defendants Drs. Ken Hinchcliff ("Defendant Hinchcliff") and Belknap–have well-known animosity toward him, and that Defendant Rosol subsequently sent him an e-mail stating that he was prohibited from attending section meetings. (*Id.*)

At about the same time, Plaintiff Robertson maintains that Defendant Rosol made public the results of a separate external review of the Equine Section that included numerous derogatory remarks about him. (Doc. # 1 ¶ 25.) Plaintiff Robertson filed another complaint of retaliation on March 6, 2006. (Doc. # 1 ¶ 26.) The next day, Plaintiff Robertson met with his department head, Defendant Dr. Robert Sherding ("Defendant Sherding"), who allegedly suggested that Plaintiff retire. (Doc. # 1 ¶ 27.) Plaintiff Robertson refused, and in an April 21, 2006 meeting with Defendants Sherding and Rosol, Plaintiff Robertson was given a letter involuntarily reassigning him from his clinical track surgical duties to a strictly academic teaching position and prohibiting him from practicing surgery at the College. (Doc. # 1 ¶ 28.) Plaintiff Robertson

3

filed another complaint of retaliation with OSU that same day.  (Doc. # 1 ¶ 31.)

On April 25, 2006, Defendants Rosol, Sherding, and Hinchcliff sent a letter to numerous private-sector veterinarians informing them that Plaintiff Robertson would no longer provide surgical services at the Veterinary Medical Teaching Hospital.  (Doc. # 1 ¶ 32.)  Plaintiff Robertson maintains that the letter "constituted further defamation . . . causing Plaintiff professional embarrassment, significant emotional harm, and likely economic harm as referrals from these veterinarians constitute a sizable portion of Plaintiff's surgical practice."  (*Id.*) Plaintiff Robertson further alleges that Defendants have retaliated against him by barring him from being present during examinations of horses at the College and by awarding him a significantly lower bonus than was awarded to others within the College.  (Doc. # 1 ¶¶ 35-36.)

Plaintiff Huck filed her action on December 29, 2006, against Defendants Belknap and Rosol in their official and individual capacities, as well as OSU and its president, Karen Holbrook ("Defendant Holbrook"), in her official capacity only.  (Huck Compl.)   Plaintiff Huck asserts claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and Ohio anti-discrimination laws, 42 Ohio Rev. Code § 4112 *et seq.*, alleging employment discrimination on the basis of gender and statutorily protected activity, specifically, the counsel she provided Benson about pursuing her sexual harassment complaint.  (¶¶ 30-37 in Huck Compl.)

Plaintiff Robertson filed his action on December 29, 2006, against Defendants Rosol, Sherding, Hinchcliff, and Belknap in their official and individual capacities, as well as OSU and its president, Defendant Holbrook, in her official capacity only.  (Doc. # 1.)  Plaintiff Robertson asserts claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and Ohio anti-discrimination laws, 42 Ohio Rev. Code § 4112 *et seq.*, alleging employment discrimination on the basis of statutorily

4

protected activity, specifically, the counsel he provided Benson about pursuing her sexual harassment complaint. (Doc. # 1 ¶¶ 37-41.) Both Plaintiffs are seeking damages, as well as declaratory and injunctive relief. (Doc. # 1, at 10; Huck Compl., at 8.) Defendants have moved for judgment on the pleadings in both cases as to Plaintiffs' state law claims against them and Plaintiffs' Title VII claim against them in their individual capacities.[3] The motions are now ripe for disposition. (Doc. # 6; Doc. # 4 in 2:06-cv-1088.)

## II. Discussion

### A. Standard Involved

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard of review for judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review for motions to dismiss based on Rule 12(b)(6). In considering such a motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim[s] that would entitle him to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). *See also Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). The Court need not, however, accept as true legal conclusions or unwarranted factual inferences. *Mixon*, 193 F.3d at 400.

### B. Analysis

Defendants assert that this Court lacks subject matter jurisdiction over Plaintiffs' Title

---

[3] The parties do not dispute that Plaintiff's Title VII claims may proceed against Defendants in their official capacities.

VII claims against Plaintiffs Rosol, Sherding, Hinchcliff, and Belknap in their individual capacities, as well as over their state law claims against all defendants.  The Court will examine each argument in turn.

### 1.  Plaintiffs' Title VII Claims against Defendants in Their Individual Capacities

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.  Consequently, the Eleventh Amendment firmly establishes that federal courts are without jurisdiction to consider actions for money damages that are brought against a state or its agencies, unless the state has either expressly waived its immunity or Congress has exercised its authority under § 5 of the Fourteenth Amendment.  *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472 (1987); *Palmer v. Ohio State Univ.*, No. 2:01-CV-053, 2002 WL 483558, at *3 (S.D. Ohio 2002) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)).

The Eleventh Amendment, however, does not bar suits against state officials in their official capacity seeking prospective injunctive relief to end continuing violations of federal law. *Keaton v. State*, No. C2-00-1248, 2002 WL 1580567, *5 (S.D.Ohio, June 2, 2002); *see also MacDonald v. Vill. of Northport, Mich.,* 164 F.3d 964, 970-72 (6th Cir.1999).

For the purposes of Eleventh Amendment immunity generally, "instrumentalities" of the state are treated as the state.  Thus, "[i]t is well-settled within the Sixth Circuit that Ohio's public universities and colleges are instrumentalities of the State and are, therefore, cloaked by the

State's Eleventh Amendment immunity." *Galli v. Morelli*, 277 F. Supp. 2d 844, 859 (S.D. Ohio 2003) (citing *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 307 (6th Cir. 1984)); *see also Matteson v. Ohio State Univ.*, No. C2-99-1267, 2000 WL 1456988, at *3 (S.D. Ohio 2002); *Hines v. Ohio State Univ.*, 3 F. Supp. 2d 859, 869-70 (S.D. Ohio 1998); *Bailey v. Ohio State Univ.*, 487 F. Supp. 601, 605-06 (S.D. Ohio 1980); *Galli*, 277 F. Supp. 2d at 859–61.  As a state university, *see* Ohio Rev. Code § 3345.011, OSU thus qualifies as an arm of the state entitled to Eleventh Amendment immunity.  *See Hall*, 742 F.2d at 303.

In the instant case, Congress abrogated the States' sovereign immunity by enacting Title VII under the Enforcement Clause, § 5, of the Fourteenth Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *see also Keaton,* 2002 WL 1580567, *6.  Thus, as Defendants concede, Plaintiffs' Title VII claims can proceed against OSU and the individual Defendants in their official capacities for both perspective injunctive relief and for monetary damages.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) (stating that a "[p]laintiff's Title VII claims are permissible against the University in federal court notwithstanding the Eleventh Amendment and against Dr. Steger in his official capacity.")

The Sixth Circuit has held, however, that Title VII does not allow individually named defendants to be liable for money damages in their individual capacities.  *E.g., Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-06 (6th Cir. 1997) (holding that individuals who are sued in their individual capacities are not "employers" as defined in Title VII, 42 U.S.C. § 2000e(b), and cannot be held liable for damages under the statute); *see also Akers v. Ky. Cabinet for Families and Children*, 338 F.3d 491 (6th Cir. 2003) (reaffirming *Wathen*).  Accordingly, Defendants' motions are granted as they relate to Plaintiffs' Title VII claims for money damages against the

individual Defendants in their individual capacities.

### 2. Plaintiffs' State Law Claims Against OSU and the Individual Defendants in Their Official Capacities

Defendants submit that this Court lacks subject matter jurisdiction for Plaintiffs' state law claims because Ohio Rev. Code § 2743.02 gives the Ohio Court of Claims "exclusive jurisdiction to hear most state law claims against the State and its agencies, including those arising under" Ohio Rev. Code § 4112 *et seq.* (Doc. # 6, at 3.) Plaintiffs argue that the language of Ohio Rev. Code § 4112.02 waives OSU's immunity as an arm of the State–and, likewise, the immunity of the individual defendants in their official capacities–and that the "statute does not condition the waiver upon a suit being brought in the Court of Claims." (Doc. # 11, at 5.) Plaintiffs' argument is not well taken.

The Supreme Court has held that "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. . . . Nor does it consent to suit in federal court merely by stating its intention to 'sue and be sued' . . . or even by authorizing suits against it 'in any court of competent jurisdiction.' " *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citations omitted). Thus, Ohio Rev. Code § 2743.02, by which the State of Ohio has waived its sovereign immunity against certain state court actions by consenting to state suits in the Ohio Court of Claims, is not consequently a waiver of immunity from suit in federal court. *Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985). A multitude of courts have held that Ohio Rev. Code § 4112 is not a waiver of Eleventh Amendment immunity. *E.g., Dendinger v. Ohio*, 207 F. App'x 521, 529 (6th Cir. 2006) ("[T]he Eleventh Amendment deprives the federal courts of the power to entertain suits on claims such as [those arising under Ohio Rev. Code § 4112.02]."); *Henry v. Ohio Dep't. of*

*Mental Retardation & Developmental Disabilities*, 162 F. Supp. 2d 794, 803 (S.D. Ohio 2000) ("[T]he State of Ohio and its departments have not consented to be sued in federal court under [Ohio Rev. Code §] 4112."); *Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D. Ohio 1993) ("[Ohio Rev. Code] § 4112.01 *et seq*. . . . did not explicitly abrogate the state's Eleventh Amendment immunity from suit in federal court."). It is a clear point of law that the State of Ohio has not consented to suit in federal court by enacting Ohio Rev. Code § 4112 *et seq.* Additionally, the State's Eleventh Amendment immunity extends to state officials. *E.g., Hall*, 742 F.2d at 307 (holding that when "employees of a State face a lawsuit based on the actions they took in their official capacities, the lawsuit is deemed to be against the State" itself).

The Court thus dismisses Plaintiffs' state law claims against OSU and the individual Defendants in their official capacities.

### 3. Plaintiffs' State Law Claims Against the Individual Defendants in Their Individual Capacities

Defendants also posit that Ohio law bars claims against the individual Defendants in their individual capacities. (Doc. # 6, at 4.) Plaintiffs again argue that Ohio Rev. Code § 4112 *et seq.* waives Defendants' immunity (Doc. # 11, at 7), and they are again incorrect.

A state officer is not ordinarily liable in any civil action for damage caused in the performance of his or her duties, except where the officer's actions were outside of the scope of his or her employment or the officer acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 9.86 (2007). More importantly,

> as a *condition precedent* to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity . . . Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.

*Grooms v. Marshall*, 142 F. Supp. 2d 927, 932 (S.D. Ohio 2001) (citing *Haynes v. Marshall*, 887

F.2d 700, 705 (6th Cir. 1989)) (emphasis added).  The statutory language set forth in Ohio Rev. Code § 2743.02(F) underpins the condition precedent discussed in *Grooms*, and provides:

> A civil action against an officer . . . that alleges that the officer's . . . conduct was manifestly outside the scope of the officer's . . . employment or official responsibilities, or that the officer . . . acted with malicious purpose, in bad faith, or in a wanton or reckless manner *shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity* . . . .

Ohio Rev. Code § 2743.02(F) (2007) (emphasis added).  Plaintiffs did not follow the filing requirements by first proceeding in accordance with the mandates of the Ohio Court of Claims Act.  *See Grooms*, 142 F. Supp. 2d at 932-33.  Accordingly, the Court grants Defendants' motion for judgment on the pleadings regarding Plaintiffs' state law claims against the individual Defendants in their individual capacities.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings (Doc. # 6; Doc. # 4 in 2:06-cv-1088) that this Court lacks subject matter jurisdiction over Plaintiffs' Title VII claims against the individual Defendants in their individual capacities and **GRANTS** Defendants' motion for judgment on the pleadings that this Court lacks subject matter jurisdiction over Plaintiffs' state law claims against all Defendants. The Court dismisses Plaintiffs' Title VII claims against the individual Defendants in their individual capacities and dismisses Plaintiffs' state law claims without prejudice of filing in state court.  The Court retains jurisdiction over Plaintiffs' Title VII claims against Defendants in their official capacities.

**IT IS SO ORDERED.**

   /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE